2010 VT 79

**STATE of Vermont v. Cherish A. CARLIN**

[9 A.3d 312]

No. 09-483

¶ 1. August 19, 2010. Following a motor vehicle accident in which defendant Cherish Carlin struck and severely injured a bicyclist on Route 5 in Dummerston, defendant was charged with grossly negligent operation of a vehicle pursuant to 23 V.S.A. § 1091(b). Defendant moved to dismiss for lack of a prima facie case on the grounds that the State had insufficient evidence of gross negligence, and the trial court granted the motion. The State appeals the dismissal. We reverse and remand.

¶ 2. The accident occurred in the early afternoon of April 18, 2009. Defendant was traveling south on Route 5 in Dummerston at somewhere between forty and fifty miles per hour (the speed limit for this portion of Route 5 is forty miles per hour). This stretch of road is straight and relatively flat. The driver of the car immediately behind defendant's

car at the time of the accident stated in an affidavit that he observed defendant's car swerve sharply into the shoulder of the road approximately three-and-a-half feet outside of the travel lane and hit a bicyclist who had also been traveling southbound. This witness stated that defendant was in the shoulder for approximately one or two seconds before hitting the bicyclist. At the scene, defendant told the responding officer that she was looking for a place to eat and looked down at her GPS device. When she looked up, she saw the bicyclist directly in front of her, but by then it was too late to avoid hitting him.

¶ 3. Following the charge of grossly negligent operation of a vehicle, defendant moved to dismiss for lack of a prima facie case, arguing that the State failed to present facts to support a finding that defendant operated her vehicle in a grossly negligent manner. See V.R.Cr.P. 12(d). The court granted the motion, concluding that defendant's behavior, including looking down at the GPS unit rather than paying attention to the roadway, did not fall within the ambit of gross negligence. Instead, the court concluded that defendant's conduct "amounted to a mere momentary distraction while driving." The State moved for reconsideration or, in the alternative, for leave to appeal, arguing that the court failed to consider certain important facts.

¶ 4. The court held an evidentiary hearing on the State's motion on November 30, 2009, to give the State the opportunity to present additional evidence in support of the charge, particularly with regard to the speed at which defendant's car was traveling and her use of the GPS device. At the hearing, the State submitted an affidavit from the officer who responded to the accident, in which he stated that the speed limit in the area of the collision was forty miles per hour and noted that the driver operating the vehicle immediately behind defendant estimated that

defendant's car was traveling between forty and fifty miles per hour. The officer also stated that in his opinion defendant was grossly negligent. In addition, the State presented evidence that the GPS device in question issues a warning when it is turned on, advising drivers not to use it while driving. Following the hearing, the court declined to reconsider its original order granting the motion to dismiss, concluding instead that: (1) the additional facts did not demonstrate that excessive speed played any role in the accident; (2) the warning contained in the GPS device was not significant; and (3) the officer's opinion as to the existence of gross negligence had no probative value greater than the reasons that support it, which the court found insufficient to support the charge. This appeal followed.

¶ 5. In reviewing a motion to dismiss for lack of a prima facie case under Rule of Criminal Procedure 12(d), we view the evidence in the light most favorable to the State, while excluding modifying evidence, in order to determine whether the State has "produced evidence fairly and reasonably tending to show the defendant guilty beyond a reasonable doubt." *State v. Dixon*, 169 Vt. 15, 17, 725 A.2d 920, 922 (1999) (quotation omitted).

¶ 6. Under our statutes, gross negligence is "conduct which involve[s] a gross deviation from the care that a reasonable person would have exercised in that situation." 23 V.S.A. § 1091(b)(2). By contrast, negligence is a breach of the duty to exercise ordinary care. *Id.* § 1091(a)(2). In distinguishing the two, we have said that gross negligence " 'amounts to a failure to exercise even a slight degree of care,' " and that it requires " 'more than an error of judgment, momentary inattention, or loss of presence of mind.' " *Rivard v. Roy*, 124 Vt. 32, 35, 196 A.2d 497, 500 (1963) (quoting *Emery v. Small*, 117 Vt. 138, 140, 86 A.2d 542, 543 (1952)); see also *Shaw v. Moore*, 104 Vt. 529, 531, 162 A. 373, 374 (1932) ("Gross negligence is substantially

and appreciably higher in magnitude and more culpable than ordinary negligence. . . . It is a heedless and palpable violation of legal duty respecting the rights of others.").

¶ 7. "[D]emarcating the bounds of degrees" of negligence requires by its very nature a fact-dependent inquiry. *State v. Valyou*, 2006 VT 105, ¶ 5, 180 Vt. 627, 910 A.2d 922 (mem.). Thus, although our case law on the subject provides some guideposts, we must ultimately examine the facts presented in each case to determine whether a jury could conclude that a defendant was grossly negligent. See *State v. Koch*, 171 Vt. 515, 516, 760 A.2d 505, 506 (2000) (mem.) ("The presence or absence of gross negligence turns upon the particular factual circumstances of each case, and therefore rests within the special province of the jury."); *Rivard*, 124 Vt. at 35, 196 A.2d at 500 (noting that presence or absence of gross negligence is "generally a question for the jury," but that trial court may decide the question as a matter of law "where the minds of reasonable persons cannot differ").

¶ 8. Defendant here relies primarily on our decision in *State v. Free*, where we affirmed the trial court's decision on a motion to dismiss in favor of a defendant driver on a gross negligence claim arising out of a car accident. 170 Vt. 605, 749 A.2d 622 (2000) (mem.). There, the driver failed to notice a pedestrian in a well-marked crosswalk as he made a left turn and subsequently hit and fatally injured the pedestrian. We held that the State had failed to demonstrate a prima facie case of grossly negligent operation of a motor vehicle because the defendant's "three to four seconds" of inattention while driving amounted only to "a mere error in judgment" or "momentary inattention." *Id.* at 608, 749 A.2d at 625. Defendant argues that like the driver in *Free*, her attention was diverted from the road to her GPS device for only two seconds, and that two seconds of inattention, regardless of the

reason for the inattention, is an inadequate basis on which a jury could find gross negligence.

¶ 9. Defendant's reliance on *Free* is misplaced. Although a driver's momentary inattention, by itself, is insufficient to warrant a finding of gross negligence, if that inattention occurs in a place where there is great potential for immediate danger, it may be enough to allow a jury to find gross negligence. In *State v. Koch*, for instance, we upheld a gross-negligence conviction where evidence indicated that the defendant, driving during daylight hours, had an unobstructed view of the accident site for nearly 400 yards along a straight stretch of road, and should have plainly been able to see and avoid the victim, who was standing at the side of the road. 171 Vt. at 516-17, 760 A.2d at 506-07; see also *Peck v. Garfield*, 862 F.2d 1, 6 (1st Cir. 1988) (allowing jury to consider whether driver was grossly negligent when there was evidence that driver was inattentive for at least several seconds after observing pedestrian at side of road and that driver was speeding at the time of the accident); *Granger v. Lovely*, 19 N.E.2d 798, 799 (Mass. 1939) (although driver's inattention was momentary, because the time at which the inattention occurred was when driver was thirty feet from an underpass with abutments on both sides, "a point of great danger would be reached in less than a second" and driver's choice of "that time for even momentary inattention was evidence of gross negligence"); cf. *Duren v. State*, 102 A.2d 277, 281 (Md. 1954) ("If there is found such [a] lack of control, whether by reason of speed or otherwise, in a place and at a time when there is constant potentiality of injury as a result, there can be found a wanton and reckless disregard of the rights and lives of others and so, criminal indifference to consequences.").

¶ 10. Although this is a close case, the State presented more evidence in support

of the gross negligence charge than defendant's two seconds of inattention. Defendant here was driving on a straight stretch of road in which the bicyclist would have been clearly visible prior to the accident. Indeed, the driver directly behind defendant's vehicle testified that he observed the bicyclist well before the accident. The essential question becomes whether defendant's decision to take her eyes off the road at a time when the risk of danger was heightened because of the presence of a bicyclist amounted to "a gross deviation from the care that a reasonable person would have exercised in that situation." 23 V.S.A. § 1091(b)(2). Under the circumstances, a jury could have concluded that it was. Further, it is precisely in close and fact-dependent cases such as this one where the jury, and not the trial court judge, is in the best position to weigh the facts and render a decision. See *Langdon-Davies v. Stalbird*, 122 Vt. 56, 57, 163 A.2d 873, 874-75 (1960) ("[D]ecided cases are of little assistance in determining the existence of gross negligence under the evidence in a particular case. Each case turns almost entirely on its own peculiar factual situation."). It was, therefore, error for the trial court to dismiss the charge.

*Reversed and remanded.*