2010 VT 112

## State of Vermont v. Melvin B. Neisner

[16 A.3d 597]

No. 09-395

Present: **Dooley, Johnson, Skoglund and Burgess, JJ., and Bent, Supr. J., Specially Assigned**

Opinion Filed December 30, 2010

*Stuart G. Schurr*, Department of State's Attorneys, Montpelier, and *Charles Romeo*, Rutland County Deputy State's Attorney, Rutland, for Plaintiff-Appellee.

*William A. Nelson*, Middlebury, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Following a hit-and-run accident, a jury found defendant guilty of grossly negligent operation of a motor vehicle, leaving the scene of an accident, giving false information to a law enforcement authority, and impeding a public officer. He appeals on several grounds, claiming the trial court erred in: (1) allowing the prosecution to charge him twice for the same offense when both the charge of giving false information to a police officer and the charge of impeding an officer require the same elements of proof; (2) imposing a thirty-nine-day sentence for the false information charge in violation of his constitutional right to remain silent; (3) denying his motion for acquittal based on insufficient

evidence to support the impeding an officer charge; (4) denying his motion for acquittal when the evidence would support a showing of only negligent operation of a vehicle, not gross negligence; and (5) permitting prosecution on an incomplete and vague information, which omitted an essential element of leaving the scene of an accident. Holding that prosecution for the false information and impeding charges did violate defendant's constitutional right to be free from double jeopardy, we vacate his conviction for giving false information to a police officer and its resulting sentence. We affirm the remaining convictions.

¶ 2. The operative facts in this case are largely uncontested and are laid out below with additional facts following in the body of the opinion.[1] Defendant, a lawyer in Rutland County, was driving to his office alone one Saturday evening in September 2007. Turning north onto the Killington Access Road, a three-lane road with two north-bound lanes, he approached two motorcycles, which were traveling slowly and occupying both north-bound lanes. Defendant moved to pass the motorcycles, pulling into the left lane directly behind one of the riders — testimony conflicts as to how close to that motorcycle he came, possibly within eighteen inches. The rider in the left lane merged to the right, ahead of the second motorcycle, allowing defendant to pass. Defendant proceeded past both riders and pulled into the right lane ahead of the lead motorcycle, the rider who had been in the left lane. Less than ten seconds later, and without any clear provocation, defendant hit his brakes. The lead motorcycle braked and skidded before colliding with the rear of defendant's SUV. The rider struck defendant's vehicle and was thrown from his motorcycle. Defendant heard and felt the collision but continued to drive up the road and away from the accident without stopping. The second motorcycle rider continued after defendant's vehicle, approaching close enough to obtain the license plate number. A few minutes later, defendant drove back past the accident scene, headed in the opposite direction. Again, he did not stop.

¶ 3. Shortly after the accident, a constable of the Town of Killington arrived at the scene and spoke with the motorcyclists. Recognizing defendant's license plate number — the two had

---

[1] The slight disparity between these facts and those in the related opinion, *In re Neisner*, 2010 VT 102, 189 Vt. 145, 16 A.3d 587, is the result of the parties in the latter case stipulating to the facts. *Id.* ¶ 2.

known each other for years — he waited until the state police trooper who had been assigned the case arrived at the accident; then the constable drove to defendant's home. There, he met defendant's wife and defendant, who looked nervous and disheveled. The constable asked to examine their car and noted that there was damage to the left rear. At one point when the constable was alone with defendant's wife, she told him, "I swear to God I wasn't driving." The constable eventually stepped outside to wait for the investigating state police trooper. When the trooper arrived, testimony conflicts as to whether the constable informed the trooper of defendant's wife's denial or failed to tell him about it for several more weeks.

¶ 4. Defendant let the trooper into the home and, in front of his wife and the constable, immediately told the trooper that his wife had been involved in an accident. Defendant's wife remained silent. The trooper went to view defendant's vehicle in the garage and took photographs of it. In response to questioning about what happened, defendant indicated that his wife had been driving them both in the vehicle that evening, and they had been tailgated by two motorcycles. He explained that the motorcycles were close enough behind their car that he could not see them in the rearview mirror. He then corrected himself and said that he could not see them when he turned around, suggesting that he was in the passenger's seat, not the driver's seat. Defendant said his wife had "stepped on the brakes, perhaps a bit too hard," and they had felt something hit them from behind. The trooper asked him, "She stepped on the brakes too hard, or the brakes were stepped on too hard?" to which defendant responded, grinning, "they were stepped on too hard" without indicating who had done it. Defendant also explained that he had told his wife not to stop at the accident scene and to drive home in violation of the law, even · though he was a practicing attorney.

¶ 5. In speaking with defendant, the trooper noticed that defendant's eyes were glassy or watery, and defendant indicated that he had been drinking alcohol earlier in the day, but not immediately before the crash.[2] When the trooper asked if he could speak with defendant's wife, defendant stated that she was not going to make any statements. The trooper then asked both

---

[2] In a subsequent interview with the police, defendant stated that he had a lot to drink after the accident.

defendant and his wife to take a preliminary breath test. They both submitted to the test. Defendant registered a .123% alcohol concentration and his wife registered a .00%. The trooper then asked defendant to swear that what he had told the trooper that evening was true. Defendant declined. Based on defendant's accusation and the absence of clear conflicting evidence, the trooper took defendant's wife into custody, brought her to the state police barracks in Rutland, and cited her for leaving the scene of an accident. She was released later that night.

¶ 6. The trooper then returned to the accident scene and met with an eyewitness to the crash who had initially reported it to emergency services. The witness, an employee at a local tavern, said he had watched defendant's car attempt to pass and then finally pass the two motorcycles before cutting in front of them, braking "roughly," coming to a complete stop, and causing the lead motorcycle to strike the vehicle's rear end. Defendant then sped away. The witness stated that the driver of the vehicle was a man, who he saw drive back past the accident scene heading in the opposite direction a few minutes after the crash. Over the following days, the trooper took photographs of the roadway and made other physical observations about the accident, which he put in his official report.

¶ 7. Five weeks later, following subpoenas for an inquest into the accident served on defendant and members of his family, defendant appeared at the police station with his attorney and gave a formal statement to the investigating trooper. In the statement defendant admitted to driving the car involved in the crash, contrary to his earlier statement falsely identifying his wife as the driver. He described a tense interaction between himself and the motorcyclists leading up to the crash. He explained that he felt threatened and decided to "touch" his brakes when the two motorcycles were tailgating him. He said he felt an impact in the rear of the vehicle but "saw no accident, no motorcycle or car in the road, and . . . felt as if [he] had slowed them down." He then turned around at his office having "th[ought] better of the situation" and upon approaching the accident scene and seeing "two or three vehicles on the side of the road" he "panicked at that point" and drove home. He said he feared for his safety, thinking that the motorcyclists were "road-raged" and "would hurt [him] if [he] stopped." He was subsequently charged with the aforementioned crimes.

¶ 8. At trial defendant offered one witness, an accident reconstruction expert, in his defense. The expert testified that based on his calculations defendant and the motorcycles had been driving over forty miles an hour, and defendant had decelerated by ten miles an hour at the point in time when the motorcycle struck his car. The expert noted "[t]here was no physical evidence at the scene to indicate that the brakes were locked," which he interpreted as indication that defendant had not hit his brakes hard. The jury convicted defendant of giving false information to a law enforcement officer, impeding a public officer, grossly negligent operation of a motor vehicle, and leaving the scene of an accident.[3] He appeals.

## I.

¶ 9. Defendant's first claim on appeal is that the trial court erred in denying his pretrial motion to dismiss the charge of giving false information to a law enforcement officer in violation of 13 V.S.A. § 1754(a). Defendant argues that the false information charge, alleging that he "knowingly [gave] false information to a[] law enforcement officer with purpose to implicate another," 13 V.S.A. § 1754(a), and the impeding a public officer charge, alleging that he "hinder[ed] a[] . . . law enforcement . . . officer acting under the authority of this state or any subdivision thereof," 13 V.S.A. § 3001(a), punish him twice for the same offense in violation of the protection afforded him under the Double Jeopardy Clause of the United States Constitution. We agree and vacate his conviction for giving false information to a police officer.

¶ 10. At a hearing on defendant's motion to dismiss the false information charge on double jeopardy grounds, the trial court requested that the State clarify the particular act defendant was accused of committing which hindered the officer. The State explained that by giving false information defendant had impeded the trooper's investigation into a possible driving under the influence (DUI) charge against him and had impeded the investigation of the accident. In subsequently denying defendant's motion, the trial court reasoned that, while superficially similar, the two crimes required different elements and thus did not

---

[3] The jury found defendant guilty of the lesser crimes of grossly negligent operation, 23 V.S.A. § 1091(b), and leaving the scene of an accident, 23 V.S.A. § 1128(a), without finding that serious bodily injury had resulted from his actions.

punish the same offense. The court focused on the difference of required intent in both crimes, reasoning "the intent for the false information [charge] is to implicate another. The intent to hinder an officer is to stop them from going forward on their investigation." The court added: "You give a false statement for the crime, it is completed at the time the statement is given. The hindrance is if you do something physical, verbal, which hinders the officer and you didn't have a right to do it. That is the crime. Those elements are different."

■ ■ ¶ 11. In assessing the trial court's ruling on a question of law, we apply a de novo standard. *State v. Thayer*, 2010 VT 78, ¶ 19, 188 Vt. 482, 14 A.3d 231. The Fifth Amendment of the United States Constitution provides criminal defendants with a series of protections, including preventing them from being "subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend V. This guarantee is made applicable to Vermont through the Fourteenth Amendment's Due Process Clause. *Benton v. Maryland*, 395 U.S. 784, 794 (1969). The Double Jeopardy Clause safeguards a criminal defendant from facing multiple punishments for the same offense. *State v. Grega*, 168 Vt. 363, 382, 721 A.2d 445, 458 (1998); accord *Brown v. Ohio*, 432 U.S. 161, 164-65 (1977). The Clause principally provides a restraint on prosecutors and courts. See *Brown*, 432 U.S. at 165. Indeed, lawmakers are free to "define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial." *Id.* The Clause is best understood, then, as "limited to assuring that the court does not exceed its legislative authorization." *Id.*

■ ■ ¶ 12. The central inquiry when addressing a double jeopardy claim is one of "legislative intent, not constitutional prohibition," and this Court's task becomes predominantly one of statutory construction. *Grega*, 168 Vt. at 382, 721 A.2d at 458-59. Absent a clear indication that the Legislature meant to impose multiple punishments for the same conduct under different statutes, we apply the test laid out by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), to "divine whether the legislature intended to punish two separate

offenses or one."[4] *Grega*, 168 Vt. at 382, 721 A.2d at 458-59. This test requires us to determine "if 'each provision requires proof of a fact which the other does not.'" *Id.* at 382, 721 A.2d at 459 (quoting *Blockburger*, 284 U.S. at 304). In undertaking this test, our focus is not on the evidence offered at trial but on the elements of the crimes as they were charged. *Grega*, 168 Vt. at 384, 721 A.2d at 459; see also *Whalen v. United States*, 445 U.S. 684, 694 (1980) (dismissing argument that double jeopardy analysis limited to elements of statute as written and not to crime as prosecuted).

¶ 13. Our first step in a double jeopardy claim is to look at the statutory language in question. The charge of giving false reports to law enforcement authorities in violation of 13 V.S.A. § 1754(a) requires a person to knowingly give "false information to any law enforcement officer with purpose to implicate another or to deflect an investigation from the person or another person." In the information filed against him, the State specifically charged that defendant "knowingly gave false information to a law enforcement officer with purpose to implicate another, [his wife]." The charge of impeding a public officer punishes "[a] person who hinders a[] . . . law enforcement . . . officer acting under the authority of this state or any subdivision thereof." *Id.* § 3001(a). The act of hindering, in turn, must be something the accused has no legal right to do. *State v. Stone*, 170 Vt. 496, 500, 756 A.2d 785, 788 (2000) ("We regard the test as being one of whether or not the respondent has a legal right to take the action which results in impeding the officer." (quotation omitted)). Phrased in general terms, the information charged that defendant "hindered a law enforcement officer acting under the authority of this state." The accompanying affidavit specifically alleged defendant had hindered the officer's investigation by lying about his involvement in the case.

¶ 14. At first blush, each of these two crimes involves an element that the other does not. The false information charge requires the giving of any false information with intent to

---

[4] The *Blockberger* presumption can be overcome by "a clear indication of contrary legislative intent." *State v. Ritter*, 167 Vt. 632, 633, 714 A.2d 624, 625 (1998) (mem.) (quotation omitted). We find no such intent in these statutes. Compare 1797 Laws of the State of Vermont, § 5, at 177 (early statement of impeding crime) with 1971, No. 169 (Adj. Sess.), § 4 (criminalizing false report to a law enforcement authority).

implicate another. Conversely, the impeding charge requires an unlawful act that actually hinders the officer in an investigation. That said, here, the hindering act underlying the impeding charge was the giving of false information. As charged in the information and affidavit, and confirmed by the prosecutor at the motions hearing, the impeding charge required proof that defendant committed the unlawful act of giving false information to a police officer implicating his wife. This act hindered the trooper because it identified the wife as the driver and impaired the trooper's ability to investigate defendant for leaving the scene of an accident and DUI. While impeding and false information may be independent statutory crimes, as specifically charged here, all the elements of the false information charge were contained in the impeding charge. Thus, both crimes punished the same offense. In effect, the impeding charge incorporates the false information charge, making false information a predicate offense to defendant's conviction for impeding. In such circumstances, a guilty verdict obtained on both the predicate and compounding offense violates the Double Jeopardy Clause. *Grega*, 168 Vt. at 387, 721 A.2d at 461; accord *Whalen*, 445 U.S. at 694-95 (holding that conviction for felony-murder and rape, with rape as underlying felony, violated double jeopardy).

¶ 15. This analysis is in line with our holding from *Grega*. There, the State charged the defendant with aggravated murder and aggravated sexual assault, contending that the aggravating factor for the murder was the concurrent commission of a sexual assault. Likewise, the sexual assault was aggravated because serious bodily injury — proven because the victim died — resulted. We vacated the defendant's conviction for aggravated sexual assault, reasoning that aggravated sexual assault was a lesser-included offense to the murder because proof of the aggravating element of the murder charge necessarily proved all the elements of sexual assault. *Grega*, 168 Vt. at 384-85, 721 A.2d at 459-60. Though each crime was a separate statutory offense for which punishments were separately provided, as prosecuted "the two provisions set forth the 'same' offense under the *Blockburger* test." *Id.* at 384, 721 A.2d at 460; see also *Whalen*, 445 U.S. at 694 ("[P]roof of rape is a necessary element of proof of the felony murder, and we are unpersuaded that this case should be treated differently from other cases in which one criminal offense requires proof of every element of another offense.").

■ ¶ 16. As prosecuted in this case, defendant could not be convicted and sentenced for the crimes of giving false information to a law enforcement officer and impeding an officer without running afoul of the Double Jeopardy Clause. As in *Grega*, the false information charge was the predicate offense and contained no elements not included in the impeding charge. In convicting defendant, the jury necessarily found all of the elements of the false information charge when it adjudged him guilty of impeding an officer. For the latter conviction, however, it also found the additional element that he had hindered an officer. Cf. *Harris v. Oklahoma*, 433 U.S. 682, 682 (1977) (per curiam) ("When, as here, conviction of a greater crime, murder, cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one."). While the issue of appropriate remedy — which conviction to dismiss to avoid double jeopardy — may be present in certain cases, in this case defendant specifically appealed the trial court's denial of his motion to dismiss the false information charge; thus we need not reach that issue. Accordingly, we reverse the trial court's decision and vacate that conviction. The resulting thirty-nine-day sentence is also vacated, and we therefore do not need to address defendant's argument on that issue.

## II.

¶ 17. At the close of evidence, defendant moved for a judgment of acquittal under Vermont Rule of Criminal Procedure 29 on the charges of grossly negligent operation, impeding an officer, and leaving the scene of an accident. He appeals the trial court's denial of this motion on the grounds that there was insufficient evidence to support a finding that his acts hindered the trooper's investigation in any meaningful way and that the evidence likewise did not support a verdict of gross negligence but only a finding of simple negligence. We dispose of these two arguments in turn.

¶ 18. Defendant contends that his only act hindering the trooper's investigation was remaining silent and not admitting that he was involved in the car accident. He argues that the impeding-an-officer charge was based on his constitutional right to silence under the Fifth Amendment of the United States Constitution and Chapter I, Article 10, of the Vermont Constitution. Thus, he claims, his motion for acquittal on that charge should have been

granted. We need not entertain this argument because it is predicated on defendant's position that the evidence adduced at trial could not prove that his false implication of his wife had an impeding effect on the trooper's investigation. We review the denial of a motion for judgment of acquittal in the light most deferential to the verdict, recognizing that we cannot place ourselves in the jury's stead. *State v. O'Dell*, 2007 VT 34, ¶ 4, 181 Vt. 475, 924 A.2d 87 ("In reviewing a denial of a motion [for acquittal] based on insufficiency of the evidence, we view the evidence in the light most favorable to the State, excluding any modifying evidence, and determine whether it is sufficient to fairly and reasonably convince a trier of fact that the defendant is guilty beyond a reasonable doubt."). Under such a standard, we reject defendant's contentions.

¶ 19. The crux of defendant's argument is that the trooper, upon questioning defendant in his home and speaking with the constable, should have known defendant was lying and so could not have been hindered in his investigation. Even if he did believe the false information, defendant continues, after leaving defendant's home, the trooper's investigation into the accident was not hindered in any meaningful sense. This argument, then, boils down to two claims: (1) the trooper was not reasonably hindered, and (2) the trooper was not actually hindered.

■ ■ ¶ 20. Contrary to defendant's first claim, there was significant testimony at trial to support the jury's finding that defendant's accusation of his wife reasonably hindered the trooper's investigation beyond a reasonable doubt. We have defined hindering, for the purposes of 13 V.S.A. § 3001, to mean "to slow down or to make more difficult someone's progress towards accomplishing an objective; to delay, or impede or interfere with that person's progress." *Stone*, 170 Vt. at 499, 756 A.2d at 788 (quotation omitted). As we noted above, the interference must be an action the accused has no legal right to take. *Id.* At trial, the investigating trooper testified that the only identifying evidence he had when he was at defendant's residence was defendant's claim that his wife had been driving the car. He considered defendant's eyewitness accusation to be sufficient for probable cause to arrest defendant's wife, especially in light of the fact that defendant made the accusation in his wife's presence and she did not deny it. Though he had conflicting impressions of defendant's possible culpability — defendant equivocated about where he sat in the car

and who applied the brakes — there was sufficient evidence to show that the trooper acted based on the evidence before him.[5] Even if the jury took to heart the trooper's statements that he felt defendant was lying to him, the upshot of his testimony made it clear that he did not believe he had enough direct evidence to charge defendant and could act only upon the evidence he did have: an eyewitness statement incriminating defendant's wife.

¶ 21. Defendant's second contention similarly misses the mark. He argues that the trooper continued on his investigation of the accident, interviewing witnesses and inspecting the crash scene, just as he would have absent defendant's false information. What defendant fails to address is the possible DUI charge the trooper could have pursued against defendant.[6] The evidence at trial was clear. The trooper knew defendant had watery eyes. He knew, based on a preliminary breath test, defendant's alcohol concentration was .123%, well above the legal limit.[7] 23 V.S.A. § 1201 (legal intoxication level .08% alcohol concentration). He knew defendant's car had been driven recently, and defendant had been in the car. He may even have suspected defendant was driving. But as noted above, the only direct evidence he had as to who drove the vehicle at the time he was at defendant's home was defendant's statement accusing his wife. Upon that accusation, the trooper arrested defendant's wife, brought her to the barracks, and processed her for leaving the scene of an accident. Several hours later, according to the trooper's testimony, he spoke with an eyewitness to the accident who gave him the only conflicting firsthand testimony he received, a report that a man was driving defendant's car, alone. The trooper testified that had he had firmer ground on which to suspect a man was the operator of the car, he would have arrested defendant at defendant's home. The

[5] Even if we were to credit the testimony suggesting the constable had informed the trooper of defendant's wife's denial of her guilt before he entered defendant's home, the trooper still had to weigh this secondhand denial with a husband's blunt and repeated accusation of his own wife. This testimony is even less credible as the trooper's radio log suggests he was attempting to discover whether the driver of the car was male or female while at defendant's home, after the constable had reportedly informed him of the wife's statement.

[6] The fact that defendant's false information led to his wife's arrest for one crime — leaving the scene of an accident — does not alter the fact that it hindered the investigation into another possible crime, defendant's DUI.

[7] The results of a preliminary breath test are not admissible as substantive evidence of intoxication. 23 V.S.A. § 1203(f).

delay caused by defendant's false information significantly impeded the trooper's ability to investigate a possible drunk driving charge against defendant, as time is an important factor in testing and analyzing AC for the purposes of prosecuting a DUI. See *State v. Burgess*, 2010 VT 64, 188 Vt. 235, 5 A.3d 911. Viewing this evidence in the light most favorable to the verdict, the jury could reasonably find defendant guilty of impeding a public officer beyond a reasonable doubt. The trial court thus did not err in denying defendant's motion on this charge.

¶ 22. Turning to defendant's second claim stemming from his motion for judgment of acquittal, we likewise find sufficient evidence to support the jury's verdict that defendant's operation of his vehicle was grossly negligent beyond a reasonable doubt. The trial court found the State had presented evidence to show that defendant "slammed on his brakes after pulling immediately in front of" the motorcycle, and this "provides a basis for a jury to find that that conduct is grossly negligent." Defendant contends that there was *no* evidence to show that defendant passed and immediately braked. At most, defendant argues, he was negligent in applying his brakes because there was an insufficient gap in time between his lane-shift and his deceleration, and it was the motorcyclist who acted unreasonably in following defendant too closely. Applying the same standard as above, *supra*, ¶ 18, we reject defendant's argument.

¶ 23. Our statutes define gross negligence in the context of operating a motor vehicle as engaging "in conduct which involved a gross deviation from the care that a reasonable person would have exercised in that situation." 23 V.S.A. § 1091(b)(2). The definition of simple negligence under the same statute is "whether the person breached a duty to exercise ordinary care." *Id.* § 1091(a)(2).[8] In distinguishing these two degrees of negligence, we have said that "gross negligence amounts to a failure to exercise even a slight degree of care, and that it requires more than an error of judgment, momentary inattention, or loss of presence of mind." *State v. Carlin*, 2010 VT 79, ¶ 6, 188 Vt. 602, 9 A.3d 312 (mem.) (quotations omitted); see *Shaw v. Moore*, 104 Vt. 529, 531, 162 A. 373, 374 (1932) ("Gross negligence is substantially and appreciably higher in magnitude and more culpable than ordinary

---

[8] The jury was instructed on both grossly negligent operation of a motor vehicle and negligent operation of a motor vehicle.

negligence. . . . It is a heedless and palpable violation of legal duty respecting the rights of others."). We have also long recognized that we must look to the individual facts of a given case to determine if gross negligence is present, and in doing so we defer to the jury's findings. See, e.g., *Carlin*, 2010 VT 79, ¶ 7; *Langdon-Davies v. Stalbird*, 122 Vt. 56, 57, 163 A.2d 873, 874-75 (1960) ("[D]ecided cases are of little assistance in determining the existence of gross negligence under the evidence in a particular case. Each case turns almost entirely on its own peculiar factual situation.").

■ ¶ 24. Upon approaching the lead motorcycle before passing it, there was testimony at trial suggesting that defendant was only eighteen inches from the rider's back tire while driving between thirty and forty-five miles an hour. Upon passing the motorcycle and pulling ahead of it, defendant admits on appeal that the evidence at trial showed that he "braked too hard" under the circumstances. Testimony also showed that when he chose to apply his brakes, he was no more than twenty feet in front of the lead motorcycle and potentially as close as half a car length — "immediately in front" as the trial court described it. Moreover, there was no evidence presented that defendant had any reason to apply his brakes with such force, other than to frighten the motorcyclist. Defendant makes much of the time between his lane change and the impact, noting that all witnesses place the time as being between five and ten seconds; the implication being that the lead motorcycle was to blame for not slowing down and increasing the space between him and defendant.[9] Yet this ignores the broader context: defendant had aggressively closed in on the motorcycles, had pulled immediately in front of the lead motorcycle while both vehicles were traveling at a significant speed, and had suddenly and without cause decelerated. While defendant's expert minimized the defendant's braking actions given the expert's own reconstruction of the accident, it goes without saying that the jury was free to discount this testimony and credit other evidence. We hold that the facts above could have been found by a jury to prove beyond a reasonable doubt that defendant heedlessly and palpably failed to exercise even a slight degree of

---

[9] We need not address the fact that under defendant's scenario, he had, at most, ten seconds to appreciate the motorcyclist tailgating him and within that brief time chose to take an aggressive action — suddenly applying his brakes.

care. Thus, we find no error in the trial court's denial of defendant's motion.

## III.

¶ 25. Defendant's final claim is that the State omitted an essential element from the information charging him with leaving the scene of an accident, namely his failure to immediately stop after the crash. He argues that omission of this element denied him his basic right to be informed of "the cause and nature of the accusation" against him, Vt. Const., ch. I, art. 10, and thus, the information did not "reasonably indicate the exact offense [he was] charged with."[10] *State v. Aiken*, 2004 VT 96, ¶ 10, 177 Vt. 566, 862 A.2d 285 (mem.) (quotation omitted).

¶ 26. The text of the statute prohibiting leaving the scene of an accident reads:

> The operator of a motor vehicle who has caused or is involved in an accident resulting in injury to any person other than the operator, or in damage to any property other than the vehicle then under his or her control shall immediately stop and render any assistance reasonably necessary. The operator shall give his or her name, residence, license number, and the name of the owner of the motor vehicle to any person who is injured or whose property is damaged and to any enforcement officer. A person who violates this section shall be fined not more than $2,000.00 or imprisoned for not more than two years, or both.

23 V.S.A. § 1128(a). As issued, the information charged that defendant

> on September 22, 2007, operated a motor vehicle and was involved in an accident resulting in serious bodily injury

---

[10] Defendant raises an additional claim, in a footnote, that the information also failed to charge that defendant "knew he was involved in an accident, which this Court has held to be an essential element of the crime, *State v. Keiser*, 174 Vt. 87, 93[, 807 A.2d 378, 384] (2002)." Defendant did not raise the omission of this implied mental element of the crime before the trial court and thus waived this argument. See, e.g., *State v. Roy*, 151 Vt. 17, 29, 557 A.2d 884, 891-92 (1989) ("[W]e believe that the omission of . . . an implied [intent or knowledge] element is not fatal, especially where defendant has failed to object below."), *overruled on other grounds by State v. Brillon*, 2008 VT 35, ¶¶ 14-15, 183 Vt. 475, 955 A.2d 1108.

to [the motorcyclist] and failed to give his name, residence, license number and the name of the owner of the motor vehicle to any person who is injured or whose property is damaged and to any law enforcement officer in violation of 23 V.S.A. § 1128(b).

Defendant specifically claims that as written, the omission of "immediately" from the information means it could reasonably have referred to his failure to give information moments after the accident, or his failure to give information when he drove by the accident scene a second time, or his failure to give information to the trooper when questioned at his home later that night. This, he complains, creates an impermissible ambiguity in the information rendering it invalid. Moreover, the latter two scenarios to which the information could refer would involve applying 23 V.S.A. § 1128 to a completed crime — he had already left the scene of an accident — and thus would violate his right against self-incrimination.

¶ 27. The sufficiency of an information may be challenged at any time, even on appeal. V.R.Cr.P. 12(b)(2); *State v. Stell*, 2007 VT 106, ¶ 10, 182 Vt. 368, 937 A.2d 649. We assess an information's clarity under V.R.Cr.P. 7(b), which demands that it be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." This standard upholds the constitutional imperative. *State v. Bradley*, 145 Vt. 492, 495, 494 A.2d 129, 131 (1985) ("Compliance with [Rule 7(b)] satisfies the defendant's right under Chap. I, Art. 10 of the Vermont Constitution and the Sixth Amendment of the United States Constitution . . . ."). The standard creates a rule "based upon common sense and reason," akin to our standards for notice pleading. Reporter's Notes, V.R.Cr.P. 7(b). Still, it must contain the elements of the offense in order to satisfy the constitutional demands. See *State v. Kreth*, 150 Vt. 406, 407-08, 553 A.2d 554, 555 (1988). Our examination of the information is "not a subjective inquiry as to what the accused actually understood, but a scrutiny of the charge, as made, to determine what offense is reasonably indicated by its language." *State v. Christman*, 135 Vt. 59, 61, 370 A.2d 624, 625 (1977); accord *State v. DeLaBruere*, 154 Vt. 237, 276, 577 A.2d 254, 275-76 (1990) (noting application of a "common sense approach to the constitutional and criminal rule notice obligation"). A reasonable understanding of the charge is not based solely on

the precise wording of the information but draws upon the additional facts found in the accompanying affidavit. See *State v. Loso*, 151 Vt. 262, 265-66, 559 A.2d 681, 684 (1989).

¶ 28. Here, there is no honest ambiguity as to the charge leveled against defendant. The cited statute criminalizes leaving the scene of an accident in which the accused was involved. The language of the information says as much, and the attached affidavit includes the charge that:

> [the] crash resulted in damage to property other than the vehicle then under [defendant's] control, and in serious bodily injury to a person other than himself. Following the crash, the defendant did not render any assistance reasonably necessary, or provide his name, residence, license number or the name of the owner of the motor vehicle to the person whose property was damaged, and whose body sustained a serious injury, or to any law enforcement officer.

Though the word "immediately" is not present in either the information or the affidavit, the plain meaning of the phrase "following the crash" and the allegation that there had been a serious injury to which defendant "did not render any assistance reasonably necessary" make clear that the State was not charging defendant with violating the statute by later driving past the scene after he had originally fled or when the trooper questioned him at his home.

¶ 29. Beyond the absence of any ambiguity in the charge given the accompanying affidavit or confusion owing to the omission of the term "immediately," we note that defendant has not shown any disadvantage to his case based on the allegedly faulty information. We have regularly recognized that the constitutionally required clarity in an information is necessary to "reasonably indicate the exact offense the accused is charged with in order to allow him to prepare intelligently for his defense." *Loso*, 151 Vt. at 265, 559 A.2d at 684 (quotation omitted); accord, e.g., *State v. Phillips*, 142 Vt. 283, 288, 455 A.2d 325, 328 (1982); *State v. Woodmansee*, 124 Vt. 387, 390, 205 A.2d 407, 409 (1964). Indeed, we have held that "the key inquiry is whether it is fair to require the defendant to defend on the basis of the charge as stated in the particular information." *State v. Williams*, 160 Vt. 615, 616, 627

A.2d 1254, 1255 (1993) (mem.). Reviewing some of our past cases on this issue solidifies our analysis.

¶ 30. In upholding the sufficiency of an information charging truancy, in *DeLaBruere* we recognized that the charging document need not detail potential exceptions to the charged crime. 154 Vt. at 277-78, 577 A.2d at 276. Indeed, we held that "it is not necessary that the State detail all those obligations [included by reference in the statute] in the information where the defendants have sufficient notice of the charges *to form a defense.*" *Id.* at 277, 577 A.2d at 276 (emphasis added). Likewise, in *State v. Brown*, 153 Vt. 263, 272-73, 571 A.2d 643, 648-49 (1989), we found an information that, among other things, only generally referred to "sexual acts" and did not use the term "sexual assault" in charging attempted sexual assault was not defective. We noted that none of the various omissions the defendant alleged were fatal because they did not compromise his "ability to prepare an intelligent defense." *Id.* at 273, 571 A.2d at 649.

¶ 31. Turning to cases where we recognized flaws in the charging documents, the same construction holds true. In *Bradley*, we vacated the defendant's sentence for driving with a suspended license because the information failed to allege the reason her license had initially been suspended, which was necessary for the imposition of a mandatory minimum sentence — an essential fact necessary to "enable her to make intelligent preparation for her defense." 145 Vt. at 495-96, 494 A.2d at 131-32 (quotation omitted). Such information was vital to understanding the nature of the charge. In *Kreth*, although not explicit, our analysis hinged on whether the information omitted an element of the crime charged that could have provided the defendant, charged with trespassing, with a more complete defense; it failed to charge that he was not licensed to be on the property. We reversed the conviction because the State had not clarified whether the defendant was accused of being on another's property without consent. *Kreth*, 150 Vt. at 410, 553 A.2d at 556 (citing *Bradley*, 145 Vt. at 495, 494 A.2d at 132). Finally, in *Williams*, another license suspension case, we again noted that the State's failure to provide the underlying cause of the suspension in the body of the information invalidated the conviction. 160 Vt. at 617, 627 A.2d at 1255. This omission meant the "defendant had no opportunity to present any potential defense concerning the basis of the suspension," and therefore the

Court could "hardly conclude that defendant was not prejudiced in preparing his defense." *Id.*

¶ 32. There has been no such claim of surprise or prejudice here, nor could there be. The information and accompanying affidavit clearly explained the charged conduct and related it directly to the statute in question. Defendant's ability to prepare his defense was in no way influenced. His argument at trial suggested that he did not know he had caused an accident; the "impact did not seem hard," and he "saw no accident, no motorcycle or car in the road." His appellate brief suggests no further constraints on his ability to muster a defense. As we noted in *Loso*, another case wherein the defendant argued the omission of "immediately" rendered an information charging leaving the scene of an accident inadequate: "This was not a case where a defendant is surprised by an additional charge and is unprepared to present evidence in defense. Had defendant been charged by the statutory language, as he well might have been, his defense would not have been any different." 151 Vt. at 266, 559 A.2d at 684; see *State v. Francis*, 151 Vt. 296, 309, 561 A.2d 392, 400 (1989) ("Here, the claim is not that no offense was charged, but that the information was insufficiently specific to inform defendant precisely which type of assault was involved in the alleged assault and robbery. Both defense and jury, however, were well aware of which type of assault was involved . . . .").

¶ 33. The information and affidavit reasonably informed defendant of the charged conduct, and defendant has shown no disadvantage from the alleged infirmity in the information. Thus, we affirm his conviction for leaving the scene of an accident.

*Conviction and sentence on Count 3 are vacated. Counts 1, 2, and 4 are affirmed.*