2011 VT 35
In re Melvin B. Neisner, Jr.
No. 2011-127, APRIL TERM, 2011.
Supreme Court of Vermont.
Filed April 5, 2011.
March 31, 2011.

ENTRY ORDER
In the above-entitled cause, the Clerk will enter:
¶ 1. The Professional Responsibility Board's recommendation that petitioner be reinstated as a member of the Vermont Bar, upon conditions, is accepted. Petitioner is reinstated as of the date of this order.
Paul L. Reiber, Chief Justice, John A. Dooley, Denise R. Johnson, Marilyn S. Skoglund and Brian L. Burgess, Associate Justices. Theodore C. Kramer, Esq., Chair, Jean Brewster Giddings, Esq., Christopher G. Chapman.

Decision No. 139
Petitioner filed a Motion for Reinstatement on January 3, 2011, pursuant to Rule 22(d) of Vermont Supreme Court Administrative Order 9. The matter was heard on February 9, 2011 before a Hearing Panel consisting of Theodore Kramer, Esq., Chair, Jean Brewster Giddings, Esq. and Christopher G. Chapman. Disciplinary Counsel, Michael Kennedy was present as was Petitioner who appeared pro se. Disciplinary Counsel took no position with respect to the reinstatement, leaving the petitioner to his proof. The Hearing Panel finds that Petitioner has proved by clear and convincing evidence that he has met the requirements of Administrative Order 9 Rule 2D and recommends to the Supreme Court that petitioner be reinstated with the probationary conditions outlined below.

History
Respondent was involved in a motor vehicle accident on September 22, 2007. As a result of his actions following the accident, he was charged with multiple crimes and following a jury trial was convicted of several charges including the felony charge of impeding a police officer in violation of 13 V.S.A. § 3001(a). Following the convictions, Disciplinary Counsel filed a Petition of Misconduct against Respondent. Respondent and Disciplinary Counsel agreed that the Supreme Court could suspend Respondent's license to practice law on an interim basis pending the resolution of the charges of misconduct. The Supreme Court entered the Order of Suspension on January 9, 2009.
Respondent and Disciplinary Counsel stipulated that Respondent's convictions for impeding a police officer and giving a false report to a to a police officer violated Rule 8.4(b) of the Vermont Rules of Professional Conduct which states that it is professional misconduct for a lawyer to "engage in a `serious crime,' defined as illegal conduct involving any felony or involving any lesser crime a necessary element of which involves interference with the administration of justice, false swearing, intentional misrepresentation, fraud [or] deceit. . . ."
On July 9, 2009, Hearing Panel No. 8, consisting of John T. Leddy. Esq., Chair, Joseph F. Obuchowski, Esq. and Tim Volk, considered the stipulations of the parties and heard evidence on the issue of sanctions. The Panel accepted the stipulation of facts and the recommended conclusions of law and found a violation of Rule 8.4(b) of the Vermont Rules of Professional Conduct. The Panel imposed a one year suspension commencing on the date that the decision became final and ordered twelve months probation with the condition that Respondent provide no less than 500 hours of pro bono legal services to organizations or individuals engaged in community service.
Respondent appealed the recommended sanction to the Vermont Supreme Court and on December 30, 2010, the Court issued its decision upholding the conclusion that Respondent violated Rule 8.4(b) and amending the sanction.
The Court ordered that Respondent be suspended for a period of two years commencing on the date that the interim suspension became effective and ordered that Respondent perform 200 hours of pro bono legal services under the auspices of the Vermont Volunteer Lawyers Project.

Standard for Reinstatement
A.O.9 Rule 2D provides that in a reinstatement proceeding the petitioner ". . . shall have the burden of demonstrating by clear and convincing evidence that he or she has the moral qualifications, competency, and learning required for admission to practice law in the state, and the resumption of the practice of law will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest and that the respondent-attorney has been rehabilitated." The Hearing Panel considered each of these elements as it evaluated the testimony of Petitioner's witnesses. Disciplinary Counsel cross examined Respondent's witnesses but presented no witnesses of his own.
The issues of greatest concern to the Panel are whether Respondent has been rehabilitated and whether his reinstatement will be detrimental to the standing of the bar and we will address these first.

Rehabilitation.
Both Respondent and his witnesses testified about his introduction to Alcoholics Anonymous which was the day after the accident in September of 2007. He went to the meeting with his neighbor and friend James Judge who testified at the hearing and with whom he still regularly attends meetings. Respondent admitted that he thought the program was strange at first but now wholeheartedly embraces AA. He acknowledged that he needs AA, that he enjoys it and that it is an important part of his life and states that he will continue to go to meetings because of the benefit to him, and because he believes that he is able to help others as well.
Kathleen Judge, his neighbor and a clinical social worker with experience in alcohol rehabilitation, testified about her perception of Respondent's present situation. She believes that he has been rehabilitated, that his active involvement in AA and in incorporating and working the twelve step program has changed him. When asked about the possibility of recurrence, she stated that she believes that recovery is a process and that the likelihood of Respondent's drinking again is not great.
Respondent began working, with Susan Geno, a drug and alcohol counselor shortly after the accident. She testified by telephone that she had worked with him for 1.5 to 2 years. Treatment is now terminated and she does not feel that he needs more treatment. She believes that he will attend AA for the rest of his life.
James Judge testified that he believes that Respondent reached his bottom at the time of the accident in 2007 and that this paved the way for his entry into AA. He testified that Respondent has worked very hard in the program. Respondent is a tremendous asset to the AA group in Killington. He chairs meeting at times and is helpful to others.
Another part of rehabilitation is the acknowledgment of wrongdoing. This is also a part of the AA program. Several witnesses testified to Respondent's remorse at the damages he had done to his family and to the community. Respondent also acknowledged that in the past he sometimes had issues with anger. He realizes that with return to practice the old stresses will still be there, but he feels that with what he has learned in AA, he will be better able to handle the stress and that anger will not be the problem that it occasionally was in the past.
Daniel Ewald, an attorney with whom Respondent has worked during the period of his suspension, also addressed the issue of Respondent's anger management. He acknowledged that there is a fine line between anger and aggressive and zealous representation and that at times before the accident he questioned the appropriateness of Respondent's anger. He believes that Respondent now has a "gentler attitude," that he is less aggressive, more understanding and more open-minded.
Respondent also acknowledged what he had done to his family by his actions in 2007. His wife has been supportive throughout this time, and Respondent acknowledged that his wife was more important to him than anything and that he believed that he would lose her if were to drink again. He never wants to go back to where he was in 2007, when he had lost the respect of his wife, his children and his community.
We believe that Respondent has been rehabilitated. We have every expectation that he will continue with AA, which has been such an important part of his life in the past three and one half years, and that there is a good likelihood that he will not begin drinking again.

Detriment to the legal system and subversion of the public interest.
The crimes of which Respondent was convicted, including the felony of impeding a police officer, are serious. Respondent's accident, the charges against him and his criminal jury trial were the subject of significant media coverage. The panel is concerned whether Respondent's readmission to the bar will adversely affect the integrity and standing of the bar and whether it is in the public interest to return him to the practice of law.
In considering the appeal of Respondent's professional conduct case, the Supreme Court looked at the underlying facts in considering sanctions. This is equally appropriate here in considering reinstatement.
There is no disagreement that respondent's felony conviction for the crime of impeding a public officer is professional misconduct as defined by Rule 8.4(c). . . . Although impeding a public officer does not necessarily involve intentional misrepresentation, dishonesty, or deceit, in this case that was respondent's conduct. It was lying to the police officer that resulted in respondent's conviction for impeding a public officer, Neisner 2010 VT 112, ¶ 14, and the parties agreed in their joint recommendation as to conclusions of law that intentional misrepresentation and deceit are necessary elements of providing false information to a law enforcement officer." In re Neisner, Jr. 2010VT 102 ¶ 13.
The public expects, and should expect, that attorneys will act with honesty and integrity in their interactions not only with law enforcement officers, but with courts and other lawyers. In considering his misconduct appeal the Supreme Court considered the "significant harm to the public resulting from his misconduct." Id. at ¶ 17.
We must consider whether this harm would continue if Respondent were reinstated or whether there have been sufficient changes in Respondent's behavior and situation that would assure us that this potential for harm to the public or subversion of the public interest no longer exists.
At both his misconduct hearing and at the present hearing for reinstatement, Respondent presented considerable evidence of his standing in the community and the changes in attitudes towards him since the accident.
Respondent has lived and practiced law in Killington for a number of years. He has also served as moderator of the Killington Town Meeting. At the Town Meeting after the accident, he made a public apology to the town and was reelected as Moderator that year and has been every year since. He has also been appointed Town Health Officer by the Select Board. He has been a Justice of the Peace since 2000.
Respondent hit bottom in terms of his standing in the community and his alcoholism at the time of the accident in September of 2007. He was at that time a very visible and involved member of the small community of Killington. Respondent began both his recovery from alcoholism and his personal rehabilitation in this same community. Beginning with his apology to the Town Meeting in March of 2008 and his continued presence and activism in a small community where it was not possible for him to hide have stood him in good stead. All of the witnesses testified that he has regained the respect and esteem of the Killington community. When pressed, the witnesses acknowledged that there may be persons in the community who still have a negative impression of Respondent, but that if such persons exist they are a negligible portion of the community.
The view most expressed was that Respondent had been away from the practice long enough, that both the town's people and Respondent needed him to return to the practice of law and that he had come out of the experience a better person with skills and understanding that he might have lacked in the past.

Moral Qualifications
All of Respondent's witnesses believed that he possesses the moral qualifications to practice law. While none of the witnesses downplayed the seriousness of Respondent's conduct, all believe that he was of person of high moral character and integrity before the accident and that he still possessed these qualities.
During his suspension Respondent has been working as a paralegal for attorney Daniel Ewald. Ewald testified that when Respondent was practicing he always knew that he could rely on him to be straightforward and honest in their interactions. He testified that he had no problems in the work that Respondent did for him. He believes that Respondent had the moral strength to come through this experience and is the stronger for it. He too believes that the community will welcome Respondent back to the practice of law.
Respondent has also worked as a paralegal for Attorney Theodore Robare who has also been representing a number of Respondent's former clients. While working in Robare's office, Respondent was careful to make it clear to clients his status as a paralegal, and there were no concerns on the part of clients. Robare strongly believes that Respondent posses the moral qualifications to practice and that he should be allowed to return to the practice of law.

Competency and Learning.
Respondent testified that he has completed Continuing Legal Education in substantive areas as well as professionalism and ethics. He has kept up by reading the Vermont Digest, legislative updates and information on tax law. He acknowledged that he had not done any C.L.E. in the area of electronic filing but that he was planning to do so.
Both of the attorneys with whom Respondent has been working during his suspension testified that he has the competency to practice law. Respondent, too believes that he has maintained his competency both by individual study and by working as a paralegal on cases similar to those of his own practice.

Conclusions of Law
The Panel finds by clear and convincing evidence that Respondent has met the requirements of A.O.9 Rule 2D. He has shown that he has the moral qualifications, competency, and learning required for admission to practice law in Vermont and that his return to practice will not be detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest. We also believe that Respondent has been rehabilitated.
In assessing the issue of rehabilitation, the Hearing Panels in In re Lichtenberg, PRB Decision No. 1 (December 1990) approved by Supreme Court Entry Order, Docket No. 99-533, (January 2000), In re Blais, PRB Decision No. 58, (October 2003), approved by Supreme Court Entry Order, Docket No. 2004-010, (October 2003), and In re Lane, PRB Decision No. 108, (April 2008), approved by Supreme Court Entry Order, Docket No 2008-153, (May 2008), considered the underlying causes of the disbarment or suspension in connection with its determination of the attorney's rehabilitation.
In each of these cases it was important to identify the precipitating event or behavior that led to the charges of misconduct and to evaluate whether, at the time of the petition for reinstatement, the attorney had sufficient understanding of his situation and had made the necessary changes to assure the Panel both that he had been rehabilitated and that when faced with similar situations upon return to practice, the attorney would not revert to prior behavior.
In Lane, the attorney was disbarred for using money for his personal expenses that had been entrusted to him. The Panel found that at the time he used the funds, Lane was under emotional and financial stress, had recently separated from his wife and was isolated without any support systems. The Panel found that in the period since his disbarment he had entered a stable family situation, had developed and grown a specialized and well respected consulting practice and had new respect for the personal as well as the professional value of his license to practice law.
In Blais, what led to the suspension was an inability to effectively manage his law practice, and several cases were neglected. The reinstatement Panel found that Blais had a greater understanding of what led him to take too many cases, and that he was committed to reforming his practice style. In this case the Panel appointed a probation monitor whose practice was similar to his to assist Blais with management issues on his return to practice.
The present case is similar to Lane in that there was one specific event that led to the sanctions. The fact of Respondent's alcoholism and the continuing nature of recovery lead us to consider, however, as did the Blais Panel, whether this underlying problem has been addressed sufficiently to assure us that the stress of returning to practice will not tempt Respondent to resume his drinking.
We do not believe that Respondent will again risk his license and the respect of his family and community. We also believe that Respondent is fully aware of the importance of AA in his life and that he will continue to attend meetings regularly.
To underscore the fact that we share Respondent's belief in the importance of regular attendance at AA meetings, we are including a minimum attendance requirement in our probation order.
Attorney Robare, with whom Respondent has worked as a paralegal during his suspension, has agreed to serve as Respondent's probation monitor. He has a good working relationship with Respondent, knows his cases and understands and accepts the responsibility of being monitor.

Order
The Panel recommends that Respondent be reinstated to the practice of law in Vermont and that he be placed on probation for a period of one year on the following terms.

Probation
1. At the commencement of probation, Respondent shall select a probation monitor acceptable to Disciplinary Counsel as required by A.O.9 Rule 8(A)(6)(b). In the event that the approved probation monitor shall become unavailable during the term of probation, Respondent shall submit an alternate name to the Office of Disciplinary Counsel for approval as a substitute.
2. During the term of probation Respondent shall complete no fewer that 200 hours of pro bono legal services under the auspices of the Vermont Volunteer Lawyers Project for individuals unable to afford legal counsel.
3. During the term of probation Respondent shall attend at least one AA meeting each week.
4. Respondent shall maintain records of his time and his attendance at AA meetings and submit them to the probation monitor.
5. The probation monitor shall file quarterly reports with Disciplinary Counsel detailing Respondent's compliance with the terms of probation.
6. It shall be Respondent's responsibility to secure quarterly written reports from the probation monitor detailing compliance with probation, and he shall provide Disciplinary Counsel with copies of the reports.
7. Probation may be terminated after the initial twelve-month period or during any renewal term thereof upon the filing of an affidavit by Respondent showing compliance with the conditions of probation and an affidavit by the probation monitor stating that probation is no longer necessary and the basis for that conclusion. Such affidavits shall be filed with the Program Administrator of the Professional Responsibility Board with copies to Disciplinary Counsel.
8. The absence of the filing of such affidavits after twelve months shall be considered a recommendation of continued probation by the probation monitor.
9. In accordance with A.O. 9, Rule 8(A)(6) the probation monitor shall then file a brief written recommendation with the Office of Disciplinary Counsel.
10. Should the Office of Disciplinary Counsel desire to renew the terms of probation for an additional period, it shall notify Respondent via certified mail, return receipt requested. Should Respondent wish to be heard on the issue of renewal of probation, he shall file a request for hearing and serve a copy of the request on the Office of Disciplinary Counsel.
11. Respondent shall bear all costs associated with his probation.