*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-052

DECEMBER TERM, 2014

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Addison Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Joshua W. Laraway | } | DOCKET NO. 38-1-13 Ancr |

Trial Judge: Robert A. Mello

In the above-entitled cause, the Clerk will enter:

Defendant appeals his conviction for operating a motor vehicle in a grossly negligent manner resulting in serious bodily injury, in violation of 23 V.S.A. § 1091(b). He contends that the trial court erred by denying his post-trial motion for judgment of acquittal, in which he argued that the State failed to present sufficient evidence for the jury to conclude beyond a reasonable doubt that he was the operator of the vehicle in question. We affirm.

Defendant and his daughter's fiancé, Justin Stone, were driving in defendant's car on the evening of November 16, 2012, when the car flipped over on a state highway, seriously injuring Stone. As a result of the accident, defendant was charged with grossly negligent operation resulting in serious bodily injury, leaving the scene of an accident, operating a motor vehicle with a suspended license, and violating a condition of release. The first two charges were severed from the latter two and tried over two days. After the State rested, the trial court granted defendant's motion for judgment of acquittal with respect to the charge of leaving the scene of an accident but denied the motion with respect to the charge of grossly negligent operation. The jury then convicted defendant of the latter charge, and defendant filed a post-trial motion for judgment of acquittal, arguing that the State failed to prove he was operating the vehicle at the time of the accident. The court denied the motion, concluding that the evidence was sufficient for the jury to conclude beyond a reasonable doubt that defendant had been operating the vehicle. On appeal, defendant renews his argument that the evidence was insufficient to prove his operation of the vehicle at the time of the accident.

Our standard of review is well-settled:

> In reviewing a denial of a motion [for acquittal] based on insufficiency of the evidence, we view the evidence in the light most favorable to the State, excluding any modifying evidence, and determine whether it is sufficient to fairly and reasonably convince a trier of fact that the defendant is guilty beyond a reasonable doubt.

State v. O'Dell, 2007 VT 34, ¶ 4, 181 Vt. 475. This deferential standard reflects our recognition "that we cannot place ourselves in the jury's stead." State v. Neisner, 2010 VT 112, ¶ 18, 189 Vt. 160.

Moreover, a defendant's guilt may be proved by circumstantial evidence alone, as long as that evidence is otherwise proper. State v. Colby, 140 Vt. 638, 642 (1982); see also State v. Couture, 169 Vt. 222, 226 (1999) (rejecting defendant's request to apply more rigorous standard when reviewing motion for judgment of acquittal in case in which conviction was based solely on circumstantial evidence). "In assessing circumstantial evidence, the fact-finder may draw rational inferences to determine whether disputed ultimate facts occurred," but those inferences "must add up to more than mere suspicion," and "the jury cannot bridge evidentiary gaps with speculation." State v. Durenleau, 163 Vt. 8, 12-13 (1994).

At trial, the State presented the following evidence. Defendant's daughter testified that when she called her father on the night of the accident, he was with her fiancé at what sounded based on background noise like a bar. The last thing she heard her father say after he indicated he was coming home was "no, Justin, you're not driving, I am."

A local resident who arrived at the scene of the accident shortly after it occurred heard a man calling for Justin and observed another man lying face down in the road. She did not see any other person that may have been in the vehicle and did not hear defendant call any name other than Justin.

An officer who arrived at the scene shortly after the accident testified that defendant told him that he owned the vehicle but that the person lying in the road had been driving it before swerving to avoid some deer.

Defendant's daughter further testified that when she arrived at the scene, defendant told her that she had to get him out of there because he could not get into trouble and they needed to figure out a plan.

The officer investigating the accident testified that when he spoke to defendant the day after the accident, defendant told him that he had been in the back seat of the car, Stone had been in the front passenger seat, and some unknown person, whom he presumed to be a friend of Stone's, was driving his car when the accident occurred. Defendant's daughter also testified that when Stone was discharged from the hospital four or five days after the accident, her father told her that they needed to come up with a plan to fix things so that neither he nor Stone got into trouble. According to the daughter, defendant wanted her to say that a third person, perhaps a friend of Stone's, was driving.

Stone testified that he had been extremely intoxicated on the night in question and had no recollection of being in the car other than "seeing a blue light in my passenger mirror, in the right-side mirror." This testimony was consistent with the testimony of the first officer on the scene and another motorist suggesting that defendant's vehicle was being pursued by police shortly before the accident. In describing his injuries from the accident, Stone noted among them a bruise running from his right shoulder down to his left hip. When asked what left that mark, he said "the seat belt, from what they tell me."

To sum up, shortly before getting in the car on the evening of the accident, defendant told Stone that he would drive his vehicle. The other person in the vehicle, Stone, was so intoxicated

that he had no recollection of being in the vehicle other than seeing a blue light in the passenger side rearview mirror. Several people arrived at the scene of the accident shortly after it occurred but no one saw anyone other than defendant and Stone who could have been driving the car. After the accident, defendant wanted to get away from the scene and gave inconsistent stories over the next few days as to who was driving the vehicle. He initially implicated Stone as the driver, but then subsequently identified an unnamed friend of Stone's as the driver. He tried to get his daughter to back up the version that he eventually settled on. One of Stone's injuries was consistent with bruising from a front passenger-side seat belt. We conclude that this evidence, which "must be considered together, not separately," State v. Grega, 168 Vt. 363, 380 (1998), was sufficient for the jury to have determined beyond a reasonable doubt that defendant was the person operating his vehicle in a grossly negligent manner when the accident in question occurred. Cf. id. at 381 ("The jury could infer . . . that defendant gave police explanations for his wife's injuries because he was trying to cover up the murder as an accident.").

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

3