2013 VT 17

**In re Timothy A. O'MEARA, Esq.**

[67 A.3d 280]

No. 12-355

¶ 1. March 6, 2013. This is a reciprocal-discipline petition concerning respondent Timothy A. O'Meara, Esq., an attorney admitted to practice in Vermont. The record before the Court may be summarized as follows.

¶ 2. In October 2012, disciplinary counsel for the Professional Responsibility Board filed a notice that respondent had been disbarred from the practice of law in New Hampshire. The notice included a certified copy of the New Hampshire Supreme Court's disbarment decision, is-

sued on September 18, 2012. See *O'Meara's Case*, 54 A.3d 762 (N.H. 2012). Pursuant to Administrative Order 9, Rule 20.B, we issued an order directing respondent to inform the Court within thirty days of any claim that imposition of the identical discipline in this state would be unwarranted and the reasons therefore, based on the grounds set forth in Rule 20.D. We subsequently granted respondent's unopposed motion to extend time, and he filed an "Answer to Notification of Discipline" on January 16, 2013. Disciplinary counsel has submitted a written response.

¶ 3. The rules governing attorney discipline provide that, when a lawyer admitted to practice in Vermont has been disciplined in another jurisdiction, the Court

> shall impose the identical discipline unless the Court finds that upon the face of the record from which the discipline is predicated it clearly appears, or disciplinary counsel or the lawyer demonstrates, that:
>
> (1) The procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
>
> (2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistent with its duty, accept as final the conclusion on that subject; or
>
> (3) The imposition of the same discipline by the Court would result in grave injustice; or
>
> (4) The misconduct established warrants substantially different discipline in this state.

A.O. 9, Rule 20.D(1)-(4). Except where these grounds exist, "a final adjudication in another jurisdiction that a lawyer has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this jurisdiction." *Id.* Rule 20.E.

¶ 4. Respondent contends that imposition of the identical discipline of disbarment in Vermont would be unwarranted for the reasons set forth in Rule 20.D. To address the claim requires a brief summary of the New Hampshire disciplinary proceeding. The case arose from charges of misconduct involving respondent's representation of a forty-seven-year-old New Hampshire woman who was involved in an automobile accident in Pennsylvania that left her a quadriplegic. The disciplinary charges were heard by a hearing panel of the New Hampshire Supreme Court's Professional Conduct Committee. Following a five-day evidentiary hearing, the panel issued an exhaustive 40-page report containing extensive findings and conclusions.

¶ 5. In brief, the findings disclosed that respondent was retained by the victim and her husband in May 2005 pursuant to a signed one-page contingent-fee agreement providing that respondent would be paid one-third of the "gross amount recovered" in the case. *O'Meara's Case*, 54 A.3d at 764. Within the next several months, respondent filed a personal injury suit in federal district court in Pennsylvania, discovered that the defendant, a paving company, had insurance coverage totaling $11 million, and learned from the company's attorney that the company did not contest liability.

¶ 6. In December 2005, respondent sent a letter to opposing counsel stating, in part, that "this is a policy limits case" and that if the limits were not paid his clients had "instructed [him] to proceed to trial." *Id.* However, respondent was not, in fact, authorized to settle for the policy limits, and he sent the letter "knowing that he lacked this authority." *Id.* On January 13, 2006, respondent told the company's attorney that his clients would settle the case for $11 million and later discussed

the matter with the victim's husband, who informed him that he was not authorized to settle for that amount. Respondent did not, however, immediately inform opposing counsel that he lacked the authority to settle.

¶ 7. On January 24, 2006, when opposing counsel agreed to the $11 million settlement offer, respondent rejected the settlement. Respondent then sent a letter to counsel, which he back-dated to January 20, 2006 (four days earlier), stating that his "clients [had] withdrawn their settlement demand for the policy limits." *Id.* at 765. One week later, the company filed a motion to enforce the settlement agreement. Respondent argued in response that he had not made an offer to settle but had merely solicited an offer from the insurer, and conceded that he lacked the authority to settle the case for $11 million.

¶ 8. In the meantime, respondent's clients informed respondent of their concern that he had offered to settle for the policy limits when a certified life planner had opined that the cost to sustain the victim over her lifetime was as much as $23 million. The victim's husband suggested that respondent reduce his fee if they received only $11 million. *Id.*

¶ 9. On February 25, 2006, respondent met with his clients to prepare for a federal mediation on February 27. The victim was scheduled for surgery within a few days which the family feared she might not survive. A heated discussion ensued as to whether respondent would reduce his fee if they had to settle for the policy limits. When his clients asked respondent what would happen if they fired him, he responded that litigation "gets ugly" and that he would sue them for his one-third contingency and "would win." *Id.* They ultimately agreed to enter into a new agreement providing that respondent's fee was "to be negotiated," and this was handwritten onto the one-page fee agreement and initialed by respondent and the victim's husband. *Id.* at 766.

¶ 10. The next day, however, respondent faxed the victim's husband a memorandum purporting to confirm their agreement but providing instead for a fee of $2 million if the settlement did not exceed $11 million. At the federal mediation on February 27, 2006, respondent told his clients that he would not proceed unless he received a fee of at least $2 million, and the victim's husband signed the memorandum agreement for the $2 million fee believing that respondent would otherwise refuse to represent them. Following the mediation, respondent's clients terminated his services and accepted a settlement from the company of $11.5 million. *Id.*

¶ 11. A fee arbitration hearing followed in which respondent testified that his clients had agreed to pay him a revised fee of $2 million. Every other witness testified to the contrary, and the hearing panel found that respondent presented false testimony at the arbitration hearing on this point. Ultimately the arbitrator awarded respondent a fee of $1,587,000. *Id.*

¶ 12. Based on the foregoing, the hearing panel found by clear and convincing evidence that respondent had violated several provisions of the New Hampshire Rules of Professional Conduct. These included violations of Rule 1.2(a) (Scope of Representation), by communicating an unauthorized settlement demand; Rule 1.7 (Conflict of Interest), by allowing his own personal interest in collecting a substantial fee to affect his representation of, and loyalty to, his clients, as evidenced by his threat to sue for the contingency fee if his services were terminated, his alteration of the revised fee agreement to provide for a fee of $2 million, and his threat to withdraw on the morning of the federal mediation; and Rule 8.4(c) (Deceit and Dishonesty), by falsely testifying at the arbitration hearing that his clients had agreed to a $2 million fee at the February 25, 2006 meeting. The hearing panel recommended disbarment. *Id.* at 766-67.

¶ 13. The New Hampshire Supreme Court Professional Conduct Committee agreed with the panel's findings and conclusions, but recommended a two-year suspension rather than disbarment. Disciplinary counsel moved for reconsideration, and the committee, in response, issued an amended order finding that disbarment was the appropriate baseline sanction, while nevertheless recommending a three-year suspension because "the most serious charge [lying at the arbitration hearing] [arose] from conduct that occurred after [respondent's] representation of the client was terminated in the context of a fee dispute." *Id.* at 767.

¶ 14. The New Hampshire Supreme Court affirmed the findings of misconduct, but determined the appropriate sanction to be disbarment. The court explained that, in determining the appropriate sanction, its goals were not to punish the offender but to protect the public, maintain confidence in the bar, preserve the integrity of the profession, and prevent similar misconduct in the future. *Id.* at 769. To this end, it looked to four factors: (1) the duties violated; (2) respondent's mental state; (3) the potential for injury caused by the misconduct; and (4) the existence of aggravating or mitigating factors. *Id.*

¶ 15. As for the duties violated, the court found that respondent's misconduct in lying to the arbitration panel and allowing his own interests to interfere with effective representation of his clients violated "bedrock duties of the legal profession" and constituted "egregious" misconduct. *Id.* at 770. With respect to respondent's mental state, the court noted the findings that respondent had acted knowingly, and agreed that they were supported. As for the harm caused by the misconduct, the court observed that, apart from the costs to respondent's clients, the paramount injury here was to the integrity of the profession itself. Finally, the court found no substantial miti-

gating factors, and noted several aggravating factors, including a prior disciplinary offense for similar misconduct — lying to a tribunal, see *In re O'Meara's Case*, 834 A.2d 235 (N.H. 2003); his selfish motive; his failure to acknowledge any wrongdoing; his substantial experience in the practice of law; and his multiple rule violations. The court rejected the committee's finding that the absence of an attorney-client relationship when respondent lied to the fee-arbitration panel mitigated the offense; it concluded, to the contrary, that his actions "adversely reflect[ed] upon his fitness to practice law" by demonstrating that he was willing to lie to further his own interest at the expense of his former clients. *O'Meara's Case*, 54 A.3d at 771.

¶ 16. In light of these findings, the court concluded that disbarment was the proper sanction to protect the public, maintain the integrity of the profession, and preserve public confidence in the bar where "as in this case, an attorney not only selfishly allows his own personal interests to take precedence over his duty of loyalty to his clients, but also lies to a tribunal. No lesser sanction will suffice." *Id.* The court further ordered that the sanction take effect immediately.

¶ 17. As noted, our disciplinary rules provide that, when a Vermont attorney has been disciplined in another jurisdiction, this Court "*shall* impose the identical discipline" unless we find "upon the face of the record from which the discipline is predicated" that it is unwarranted on any one of four separate grounds. A.O. 9, Rule 20.D (emphasis added). First, the attorney may demonstrate that the procedure was "so lacking in notice or opportunity to be heard as to constitute a deprivation of due process." *Id.* Rule 20.D(1). Respondent advances several due-process claims, albeit none related to the issue of notice or opportunity to be heard. First, he notes that one of the five members of the disciplinary hearing

panel missed the last day of the hearing and as such did not participate in the decision, which was unanimous among the four remaining panel members. The record shows, in fact, that the member recused herself at the request of both respondent and disciplinary counsel, and respondent has not shown how this prejudiced him in any respect, much less violated his right to due process.

¶ 18. Respondent also notes that one of the remaining panel members sent an email to disciplinary counsel while the case was pending congratulating her on her judicial appointment and inquiring about her job. The disciplinary committee addressed this issue, finding that respondent had established no basis for an inference of bias by the hearing panel. The committee also noted that the panel had only the power to recommend a sanction, the ultimate authority residing with the Supreme Court. Respondent does not appear to have raised the issue with the New Hampshire Supreme Court on appeal, nor does he argue here that the incident somehow tainted the hearing panel's findings and recommendation. Accordingly, we discern no basis to conclude that respondent's due process right to a fair and impartial hearing was violated.

¶ 19. Lastly, respondent chides the New Hampshire Supreme Court for rendering a decision signed by only four of the five sitting Justices, as well as for failing to approve his request to file an oversize brief, a decision which he asserts left him unable to adequately address the issues. Again, we find nothing in these actions to suggest that respondent was denied a fair opportunity to contest the charges or a fair and impartial hearing.

¶ 20. Respondent next claims that several of the key findings underlying the New Hampshire Supreme Court's disbarment decision were unsupported by the evidence. First, he challenges the finding that, lacking the authority from his clients, he offered to settle their case for the policy limits. Respondent asserts that he merely solicited an offer of settlement. Based on its review of the entire record, including respondent's letter to opposing counsel demanding the policy limits and his subsequent letter claiming that the settlement demand had been "withdrawn," the New Hampshire Supreme Court found clear and convincing evidence that respondent had made a settlement offer without authority. *O'Meara's Case*, 54 A.3d at 767-68. Respondent cites nothing to demonstrate that this finding suffers from "such infirmity of proof" that we cannot accept the court's conclusion. A.O. 9, Rule 20.D(2).

¶ 21. Respondent also claims that the evidence failed to support the charge that he lied to the fee-arbitration panel. Relying on the undisputed evidence that respondent was the only witness to testify that the parties had agreed to a revised $2 million fee, and that the arbitration panel itself had refused to award him this amount, the New Hampshire Supreme Court concluded that the charge was supported by clear and convincing evidence. *O'Meara's Case*, 54 A.3d at 768-69. Although respondent cites evidence which, he claims, supports an inference to the contrary, it does not demonstrate such an "infirmity of proof" that we may not accept the court's conclusion. A.O. 9, Rule 20.D(2). The same conclusion necessarily applies to respondent's additional claims that he never threatened to sue his clients, and never threatened to withdraw on the morning of the federal mediation. As the New Hampshire court observed, the hearing panel as the fact-finder had the discretion "to resolve any conflict in the evidence" and assess the witness' credibility, and its findings were supported by clear and convincing evidence. *O'Meara's Case*, 54 A.3d at 768 (citation omitted). We thus find no grounds to conclude that the New Hampshire decision suffers from "such infirmity of proof" that we may not accept as final its conclusions. A.O. 9, Rule 20.D(2).

¶ 22. Finally, respondent claims that imposition of the same discipline imposed by the New Hampshire Supreme Court would result in a "grave injustice." A.O. 9, Rule 20.D(3). The claim is based on respondent's denial of any misconduct in this matter and assertion that — to the contrary — he was the injured party as a result of his clients' discontent with the original fee agreement and greed in seeking to reduce a fee legitimately earned. As discussed, however, the New Hampshire Supreme Court categorically rejected this characterization of respondent's actions based on a through and comprehensive review of an exhaustive disciplinary investigation and hearing. Respondent has adduced nothing to contradict the New Hampshire court's conclusion that he engaged in egregious misconduct warranting disbarment, or to justify the imposition of any other sanction under our reciprocal discipline rule.

*Respondent Timothy A. O'Meara is hereby disbarred from the practice of law in Vermont. Respondent shall comply with all of the requirements of Administrative Order 9, Rule 23.*