**ENTRY ORDER**
2017 VT 94
SUPREME COURT DOCKET NO. 2017-219
SEPTEMBER TERM, 2017

| | | |
|---|---|---|
| In re Joseph P. Palmisano, Esq. | } | ORIGINAL JURISDICTION |
| | } | |
| | } | Professional Responsibility Board |
| | } | |
| | } | DOCKET NO. PRB 2017-045 |

In the above-entitled cause, the Clerk will enter:

¶ 1.     On June 20, 2017, Disciplinary Counsel filed notice with this Court that respondent Joseph P. Palmisano had been disciplined in the State of Arizona.  In a written order, the Presiding Disciplinary Judge in Arizona accepted an agreement between Arizona Bar Counsel and respondent for discipline by consent.  Accordingly, the Arizona judge suspended respondent for six months beginning August 1, 2017.  Following this suspension, and beginning on the date of his reinstatement, respondent will be on probation in Arizona for two years.

¶ 2.     On June 22, 2017, this Court directed respondent and Disciplinary Counsel to inform the Court within thirty days of any claim that the imposition of identical discipline in Vermont would be unwarranted.  See A.O. 9, Rule 20(B), (D).  Respondent filed notice that he did not oppose the imposition of identical discipline.  Disciplinary Counsel argued for a harsher sanction.  She asserted that a two-year-and-six-month suspension was appropriate under Vermont law given the severity of misconduct set forth in the Arizona decision and the difficulty in supervising probation while respondent was in Arizona.  Disciplinary Counsel further requested that respondent not be allowed to seek reinstatement in Vermont under A.O. 9, Rule 22(D) until he was reinstated in Arizona.  Respondent submitted an additional reply, opposing Disciplinary Counsel's request.  While he agreed that he would not seek reinstatement in Vermont until Arizona had granted him authority to practice law, he maintained that a six-month suspension followed by two years of probation was an adequate and appropriate sanction.  On July 25, 2017, the Court placed respondent on interim suspension status pending a ruling on the petition for reciprocal discipline.  As set forth below, we conclude that the appropriate discipline to be imposed in Vermont is a two-year suspension, effective as of July 25, 2017, the date that respondent was placed on interim suspension status.

I.  Arizona Discipline

¶ 3.     Respondent admitted to the counts against him in Arizona, and we conclude that the misconduct described in the Arizona decision has been conclusively established.  See A.O. 9, Rule 20(E) ("Except where grounds exist under [A.O. 9, Rule 20(D)], a final adjudication in another jurisdiction that a lawyer has been guilty of misconduct shall establish conclusively the

misconduct for purposes of a disciplinary proceeding in this jurisdiction."). In considering reciprocal discipline, we are limited to the "face of the record from which the discipline is predicated," A.O. 9, Rule 20(D), and we do not consider any explanations or evidence not found in the Arizona record. We note that the Arizona judge rejected the argument, stipulated to by respondent and Arizona Bar Counsel, that respondent's disciplinary violations resulted from respondent's failure to properly manage his office. Respondent stipulated that there were no mitigating factors. The judge found that respondent's admissions far more supported the conclusion that respondent would not, rather than could not, manage his calendar, duties, or practice.

¶ 4. With this in mind, we turn to the facts as summarized by the judge in the Arizona decision. Respondent is the owner and managing attorney of the Acacia Law Group (ALG) primarily located in Mesa, Arizona with an office also maintained in Tucson, Arizona. Respondent engaged in a practice of taking out-of-county clients and "contracting" with other attorneys to perform the actual legal services. The State Bar of Arizona filed a complaint against respondent in 2016, as amended in 2017, alleging that he violated the Arizona Rules of Professional Conduct in various ways.

¶ 5. Under count one, respondent had a client who lived in New York. The client hired respondent's law firm to modify his probation in Arizona. Respondent failed to respond to repeated phone calls from the client for ten months and filed nothing with the court. Respondent did not provide a written accounting as requested by the client. When the client demanded a refund, respondent demanded additional money to file a petition to modify the client's probation. One month later, respondent filed a notice of appearance without requiring the additional money. The probation officer filed a petition waiving the deferred jail time, which was granted by the court.

¶ 6. Under count two, respondent represented multiple clients in municipal court cases. He did not personally appear in any of the cases. He missed multiple hearings and was ordered to personally appear in one of the cases but failed to do so.

¶ 7. Under count three, a client contacted respondent regarding a traffic case. The client indicated that he wanted to obtain video footage of the intersection at issue but neither respondent nor his law firm (ALG) tried to obtain the video. Respondent sent an ALG notice-of-appearance form to a Tucson lawyer to file with the court. Respondent informed this lawyer that he was unsure of what type of legal coverage would be needed. Shortly before the trial date, respondent asked the Tucson attorney for the first time to handle the hearing. When the Tucson attorney contacted the client that same day, it was the first time the client was told that the Tucson attorney was covering the traffic hearing. Respondent handled the appeal without charge and lost the appeal.

¶ 8. Under count four, respondent was scheduled to appear in two superior court cases at the same time. He did not file any motions to continue either matter. The day before the hearings, respondent's secretary called the court, asking if it had received a motion to continue. The court had not and respondent's secretary emailed two motions, neither of which was filed with the court clerk. The motions had the wrong court and wrong case number on them. Respondent stated that he was in trial in a third case on the date in question. It was later discovered that this

2

statement was not true. He was not in trial on the date in question; he had been ordered to appear in that case to set a trial schedule.

¶ 9. Under count five, the grandparents of a client paid respondent $10,000 to represent their granddaughter. In a separate case, they paid respondent $600 to represent their daughter in Indiana regarding an Arizona extradition hold for a relative. However, Arizona released the extradition shortly thereafter eliminating the purpose of the representation. Respondent refused to refund any of the prepaid fee on the daughter's case as he had applied the entirety of that money to the granddaughter's case. The grandparents repeatedly requested the refund from respondent who finally set a time to personally meet with them. Respondent did not appear at the meeting. The meeting was then set for the following day. The discussion became profane and respondent chest-bumped the grandfather before forcing both grandparents out of his office.

¶ 10. Under count six, respondent was hired by Paul Walsh, who was indicted for stabbing his brother John Walsh. Under a plea agreement, Paul Walsh was placed on probation. Respondent did not move to withdraw from the case. Thereafter, John Walsh was indicted for shooting Paul Walsh and then himself. Respondent represented John Walsh. After the court removed him for a nonwaivable conflict, respondent argued that he had obtained no "attorney-client" information from Paul and that the parents had waived any conflict. There was evidence, however, that respondent told police detectives that Paul Walsh had been using drugs.

¶ 11. Under count seven, respondent's client was charged in a criminal case. A court found in June 2013 that respondent had not complied with his disclosure obligations. By October 2013, respondent still had not produced a disclosure as ordered by the court. He was twice again ordered to produce the disclosure and failed to do so. He was sanctioned $250. Respondent subsequently told the court that he had paid the sanction, which was not true. The court set a hearing for contempt. Respondent still failed to pay the sanction and blamed his assistant. He was sanctioned an additional $250. He then paid the sanction.

¶ 12. Respondent admitted the counts against him and admitted to numerous and repeated violations of the Arizona Rules of Professional Conduct based on the conduct set forth above, including: failing to comply with the requests of his client regarding representation; failing to act with reasonable diligence and promptness in representing clients; failing to communicate with clients; failing to assure all lawyers in the firm conformed to the Rules of Professional Conduct; engaging in conduct prejudicial to the administration of justice; failing to expedite litigation; accepting prepaid legal fees related to his anticipated representation of one client, but applying the fees to the outstanding bill of another client; failing to promptly return unearned fees and property; engaging in unprofessional conduct; revealing client information related to the representation without client consent; failing in duties to prior client by representing another in the same or similar matter in which the former and present clients' interests were materially adverse without former client's consent; using information relating to the representation of a former client to the disadvantage of the former client; disobeying an obligation under the rules of a tribunal; failing to make reasonably diligent efforts to comply with a legally proper discovery request by an opposing party; and knowingly violating the rules and orders of the court. See Arizona Rules of Professional Conduct, http://www.azbar.org/ethics/rulesofprofessionalconduct. These rules are substantially similar to the following Vermont Rules of Professional Conduct: V.R.P.C. 1.2, 1.3, 1.4, 1.5, 1.6, 1.9(a), 1.9(c), 1.16, 3.2, 3.4(c), 3.4(d), 5.1, 5.3, and 8.4(d).

¶ 13.    The agreed-upon sanctions in Arizona included a six-month suspension with two years of probation.  The parties agreed that each of respondent's violations warranted a suspension under the American Bar Association Standards for Imposing Lawyer Sanctions [hereinafter ABA Standards] applicable to each violation.  They stipulated that respondent acted both knowingly and negligently.  They specified that his conduct violated his duty to his clients, the profession, the legal system, and the public.  The parties also agreed that the following aggravating factors were present in the record: prior disciplinary offenses; a pattern of misconduct; multiple offenses; and substantial experience in the practice of law.  There was no mitigation.

¶ 14.    The Arizona judge accepted the agreement but rejected the parties' assertion that the misconduct was related to the failings of the management of respondent's office.  The judge found that there were far too many events involved to support such a conclusion.  Instead, the judge found that respondent's admissions supported the conclusion that respondent would not, rather than could not, manage his calendar, his duties, or his practice.  The judge remained mindful, however, that the object of lawyer discipline was to protect the public, the profession, and the administration of justice, rather than punish the lawyer.  He explained that, through the conditions of probation, respondent was provided ample tools and opportunity to improve his conduct via the Law Office Management Assistance Program and the State Bar's Member Assistance Program and that respondent "must hoist his anchor out of the muck and mire of his own conduct through these programs."  The judge found that the suspension put respondent on clear notice that his failings were serious and multiple.  He concluded that the proposed sanctions of a six-month suspension with detailed terms of probation met the objectives of attorney discipline, and imposed this sanction.  Respondent's suspension began in Arizona on August 1, 2017, and his two years of probation will commence on the date of respondent's reinstatement.

## II.  Reciprocal Discipline

¶ 15.    As noted above, Disciplinary Counsel argues that the sanction imposed in Arizona is inconsistent with sanctions ordinarily imposed against Vermont attorneys for the degree of misconduct at issue.  She also asserts that it would be very difficult to supervise probation for an attorney practicing in Arizona.

¶ 16.    While there is a presumption that this Court will impose the same sanction as that imposed in a different state, our rules recognize that there may be cases where "upon the face of the record from which the discipline is predicated it clearly appears, or disciplinary counsel or the lawyer demonstrates, that: . . . [t]he misconduct established warrants substantially different discipline in this state."  A.O. 9, Rule 20(D)(4).  This is such a case.  In reaching our conclusion, we have considered the ABA Standards.  See In re Warren, 167 Vt. 259, 261, 704 A.2d 789, 791 (1997) (explaining that Court looks to ABA Standards for guidance when sanctioning attorney misconduct, and Standards identify following factors for determining whether recommended sanctions are appropriate: "the duty violated, the lawyer's mental state, the actual or potential injury caused by the misconduct, and the existence of aggravating or mitigating circumstances") (citing ABA Standard 3.0 (additional citation omitted)).  Respondent stipulated in Arizona that each of the disciplinary violations warranted a suspension under the Standards applicable to each violation.  Both parties here agree that a suspension is the appropriate sanction, but disagree as to the appropriate length.  The Standards instruct that "[t]he specific period of time for the suspension

should be determined after examining any aggravating or mitigating factors in the case." ABA Standard 2.3, Commentary.

¶ 17. The violations described above largely reflect respondent's knowing conduct. Through his knowing acts, in addition to his negligent conduct, respondent violated his duty to his clients, the profession, the legal system, and the public. There were numerous aggravating factors, but no mitigating factors. For these repeated offenses, including threats and misrepresentation to the court and clients, we find a two-year suspension appropriate and consistent with discipline imposed in other Vermont cases.

¶ 18. This case is significantly more egregious than other cases where we have upheld a six-month suspension. See, e.g., In re Hongisto, 2010 VT 51, 188 Vt. 553, 998 A.2d 1065 (mem.). In Hongisto, we found a sanction of two concurrent six-month suspensions appropriate where the attorney took a retainer but failed to contact the client or return his forty-to-fifty phone messages; failed to return the client's file as requested; committed a trust account violation; failed to cooperate with disciplinary counsel in the investigation of pending complaints; and practiced law without a license. Here, by contrast, respondent committed numerous violations of the rules in many different cases, including not only failing to communicate with numerous clients, but also providing incorrect information to the court, failing to appear in court, and representing a client despite a clear conflict of interest.

¶ 19. Disciplinary Counsel has cited other decisions by the Professional Responsibility Board that support the conclusion that a suspension of greater than six months is appropriate. See In re Colburn, PRB File No. 2006.200/251/267, PRB Decision 102 (June 18, 2007) (imposing three-year suspension where attorney committed numerous rule violations involving multiple clients by repeatedly agreeing to represent someone in litigation, failing to do any work, and then misrepresenting true status of case to client); In re Macero, PRB File NO. 2013-022, PRB Decision 161 (July 24, 2013) (noting, in reinstatement ruling, that attorney had been reciprocally suspended for one year for submitting false statement to tribunal, which was based on misrepresentation regarding appellate filing fee). Compare In re McCarty, 2013 VT 47, 194 Vt. 109, 75 A.3d 589 (concluding that three-month suspension was appropriate where attorney intentionally drafted deceptive documents to circumvent legal process, which produced serious injury to others and to legal system, and finding that conduct was severe but also that various mitigating factors were present), with In re O'Meara, 2013 VT 17, 193 Vt. 671, 67 A.3d 280 (mem.) (imposing disbarment as reciprocal discipline where attorney committed misconduct by: communicating unauthorized settlement demand, allowing his own personal interest in collecting substantial fee to affect his representation of, and loyalty to, his clients as evidenced by threats to sue clients and withdraw from case on morning of mediation and altering revised fee agreement; and by falsely testifying at arbitration hearing that clients had agreed to $2 million fee). These decisions are available on the Vermont Judiciary's website, https://www.vermontjudiciary.org/about-vermont-judiciary/boards-and-commitees/professional-responsibility/prb-decisions.

¶ 20. We found a two-year suspension appropriate in In re Neisner, 2010 VT 102, 189 Vt. 145, 16 A.3d 587. In that case, an attorney left the scene of a car accident and then falsely reported to law enforcement that his wife had caused the accident. He was convicted of impeding a public officer and giving a false report to a law enforcement authority, which constituted professional misconduct under V.R.P.C. 8.4(b). A hearing panel recommended a one-year

suspension, but we concluded that a two-year suspension and probation was "in keeping with those sanctions that we and the Professional Responsibility Board have imposed in other professional responsibility cases." Neisner, 2010 VT 102, ¶ 26. There were many mitigating factors present in Neisner, including the absence of any disciplinary record. We concluded that these mitigating factors outweighed the few aggravating factors present in the case, thereby rendering the presumptive sanction of disbarment too severe. Because the presumptive sanction was disbarment, however, we concluded that a significant suspension was warranted. We emphasized that the core of respondent's case involved " 'serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, [or] fraud.' " Id. (quoting ABA Standards § 5.11(a), at 38). The Court noted that it had imposed harsher sanctions than a two-year suspension on other attorneys with felony convictions, but reiterated that each case must be decided on its own facts. Id. ¶ 27. We found the "sanction of a two-year suspension and probationary period" appropriate in Neisner "given the criminal conviction underlying his professional misconduct and the attendant circumstances." Id.

¶ 21. While respondent did not engage in "serious criminal conduct" as in Neisner, neither can he point to any mitigating circumstances as in that case. The Arizona court did not find any mitigating factors. It did find numerous aggravating factors, however, including respondent's prior disciplinary history in Arizona. This Court has also previously imposed a private admonition as reciprocal discipline against respondent. See A.O. 9, Rule 8(B) ("Prior findings of misconduct, including admonitions, may be considered in imposing sanctions."). Additional aggravating factors include a pattern of misconduct, multiple offenses, and substantial experience in the practice of law.

¶ 22. As set forth above, each of the seven counts to which respondent admitted included multiple serious rule violations, with several counts affecting multiple clients, multiple instances of misrepresenting information to a court, and disobeying court orders. The scale of misconduct and the number of individuals and institutions affected is significant and far-reaching. Respondent violated his duty to his clients, to the legal profession, to the legal system, and to the public. His violations resulted from his refusal, rather than inability, to manage his calendar, duties, or practice. As we have often repeated, "the purpose of sanctions is to protect the public from persons unfit to serve as attorneys and to maintain public confidence in the bar, as well as to deter other attorneys from engaging in misconduct." Neisner, 2010 VT 102, ¶ 24. Mindful of this purpose, the numerous disciplinary violations described above, and the two-and-a-half-year rehabilitation process that respondent will be engaged in in Arizona, we conclude that respondent's conduct warrants a two-year suspension of his license to practice law in Vermont. This will protect the public and maintain public confidence in the bar.

¶ 23. Because respondent is suspended for more than six months, he must comply with the requirements of A.O. 9, Rule 22(D) to be reinstated. Under the rule, he may move to be reinstated in Vermont no sooner than three months before the period of suspension expires and he must serve such motion upon the Board and Disciplinary Counsel. The Board will then refer the matter to a hearing panel, which will

> promptly schedule a hearing, at which the respondent-attorney shall
> have the burden of demonstrating by clear and convincing evidence
> that he or she has the moral qualifications, competency, and learning

required for admission to practice law in the state, and the resumption of the practice of law will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest and that the respondent-attorney has been rehabilitated.

A.O. 9, Rule 22(D). The hearing panel must then issue a decision on the matter within ninety days of the date that the motion for reinstatement was filed. As an additional condition of reinstatement in Vermont, respondent must have obtained reinstatement in Arizona and complied with the terms of probation in Arizona to the satisfaction of Arizona authorities.

Respondent's license to practice law in Vermont is suspended for two years, effective July 25, 2017, the date that respondent was placed on interim suspension status. Respondent shall comply with the requirements of A.O. 9, Rule 22(D) in order to be reinstated in Vermont. He cannot be reinstated until he has been reinstated in Arizona and has complied with the terms of probation in Arizona to the satisfaction of Arizona authorities.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

☒ Publish

_____
Marilyn S. Skoglund, Associate Justice

☐ Do Not Publish

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
Karen R. Carroll, Associate Justice

7